IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2018 MAR 15 PM 3: 18
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

JOHN BESSER,
           Plaintiff,

-vs-

TEXAS GENERAL LAND OFFICE,
GEORGE PRESCOTT BUSH in his official
capacity, KELLY L. MCBRIDE, ANNE
IDSAL, and KALANI HAWKS,
           Defendants.

CAUSE NO.:
A-17-CV-1010-SS

# ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Texas General Land Office (GLO), George Prescott Bush in his official capacity, Kelly L. McBride, Anne Idsal, and Kalani Hawks (collectively Defendants)' Motion to Dismiss [#17], Plaintiff John Besser's Response [#21] in opposition, and Defendants' Reply [#22] thereto.[1] Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.

## Background

Plaintiff is a former GLO employee who brings claims under the Family Medical Leave Act of 1993 (FMLA) and under Title I of the Americans with Disabilities Act of 1991 (ADA).

Plaintiff worked for the State of Texas, as part of various state agencies, for over twenty years. Am Compl. [#10] ¶ 15. On March 6, 2016, Plaintiff began working as a contract manager for GLO, a Texas state agency. Id. ¶¶ 5, 16. Plaintiff worked with a team consisting of two other contract

---

[1] Defendants also filed two prior motions to dismiss. See First Mot. Dismiss [#6]; Am. Mot. Dismiss [#9]. But as Plaintiff subsequently filed an amended complaint, the Court DISMISSES the earlier filed motions to dismiss as moot. Additionally, Defendants filed a motion for leave to file the appendix of the pending motion to dismiss under seal, Mot. Leave to Seal [#18], which Court GRANTS as a matter of course.



managers, Ms. Nelson and Ms. Ramaekers, as well as a team lead, Ms. Danieli. *Id.* ¶ 19. Ms. McBride supervised Plaintiff's team. *Id.* ¶ 18.

On June 13, 2016, Plaintiff's husband suffered a heart attack. *Id.* ¶ 20. At that time, Plaintiff had approximately 500 hours of annual leave and 1000 hours of sick leave. *Id.* He was also eligible for FMLA leave. *Id.* ¶ 21. Plaintiff texted Ms. McBride to inform her of the family emergency and that he would be absent from work for the remainder of the week. *Id.* ¶ 20.

Plaintiff returned to work the following week but arrived late each day, at approximately 10 a.m., due to the need to provide caregiver services to his husband in the morning. *Id.* ¶ 23. On approximately June 24, 2016, Ms. Danieli commented to Plaintiff that "it must be nice to come in late." *Id.* ¶ 24. Although Ms. Danieli claimed she was only joking, Plaintiff reported the comment to Ms. McBride. *Id.*

On June 29, 2016, Dr. Osvaldo Gigliotti, the cardiologist caring for Plaintiff's husband, certified Plaintiff's need for FMLA leave to care for his husband. *Id.* ¶ 22. Dr. Gigliotti retroactively stated Plaintiff's husband would be incapacitated through June 24, 2016. *Id.* Dr. Gigliotti further indicated Plaintiff's husband would need cardiac rehabilitation therapy for twelve weeks and follow-up evaluations every three to six months thereafter. *Id.*

On June 30, 2016, Ms. Danieli informed Plaintiff he needed to work on Friday, July 1st. *Id.* ¶ 26. In light of the July 4th holiday, July 1st was scheduled to be a minimal personnel day. *Id.* Plaintiff indicated he could not work July 1st because he needed to care for his husband. *Id.* Ms. Danieli responded by rolling her eyes and asking Plaintiff how long he was going to "milk this" situation. *Id.* Plaintiff again reported Ms. Danieli's comment to Ms. McBride. *Id.*

On July 21, 2016, Plaintiff emailed Ms. McBride asking to use annual leave to miss work on August 12th and 15th. *Id.* ¶ 27. Plaintiff indicated his husband was having family visit and Plaintiff "needed to be present to limit the amount of contact . . . and the amount of activity" in which his husband engaged. *Id.* Ms. McBride approved the request. But when Ms. Danieli learned of Plaintiff's

2

request to use leave, Ms. Danieli "berated" Plaintiff, claiming Plaintiff was "always off," that "his priority should be the GLO," and Plaintiff was "taking advantage" of his husband's illness. *Id.* Ms. Danieli eventually began yelling at Plaintiff but stopped after other employees came to learn what was going on. *Id.*

When Plaintiff informed Ms. McBride of the incident, she asked Plaintiff not to report Ms. Danieli to Human Resources (HR) because Ms. Danieli would be fired. *Id.* ¶ 28. Plaintiff agreed, but other employees reported Ms. Danieli for her conduct. *Id.* In response, HR staff interviewed Plaintiff twice to investigate Ms. Danieli's behavior. *Id.* ¶¶ 29–30.

On July 26, 2016, Ms. McBride met with the three contract managers, Ms. Nelson, Ms. Ramaekers, and Plaintiff. *Id.* ¶ 31. She informed them Ms. Danieli was no longer with GLO. *Id.* She also expressed anger and told the three contract mangers "if she heard about any of them speaking about [Ms.] Danieli's departure from the GLO, they would be fired." *Id.* In the days following this conversation, Ms. McBride "made the work environment especially stressful for the [c]ontract [m]anagers." *Id.* ¶ 32.

In late August 2016, Mr. White was hired to fill the position of team lead, the role vacated by Ms. Danieli. *Id.* ¶ 33. On September 7, 2016, Plaintiff commented to Mr. White that the contract managers had been "walking on eggshells" following the investigation of Ms. Danieli's behavior and her subsequent departure. *Id.* ¶ 34. When Ms. McBride learned of Plaintiff's comment, she confronted Plaintiff and, according to him, lost her temper. *Id.* ¶ 35. Ms. McBride accused Plaintiff of turning Ms. Danieli in and blamed him for getting Ms. Danieli fired. *Id.* She reminded Plaintiff of her threat of firing the remaining contract managers if they spoke about Ms. Danieli's departure. *Id.*

In the fall of 2016, Ms. Ramaekers and subsequently Ms. Nelson left GLO. *Id.* ¶¶ 36–37. Ms. McBride blamed Plaintiff for causing Ms. Nelson and Ms. Ramaekers to leave. *Id.* ¶ 37. In a loud and angry manner, she accused Plaintiff of "mess[ing] everything up" and being disloyal to GLO. *Id.* Ms. McBride also indicated she did not know if she could continue to work with Plaintiff. *Id.* Plaintiff

filed a complaint with the HR against Ms. McBride, expressing concern Ms. McBride was retaliating against him for Ms. Nelson's departure. *Id.* ¶ 38.

A HR staff member met with Plaintiff about the complaint and investigated the situation. *Id.* ¶¶ 39, 41. The staff member concluded Plaintiff was not being subjected to a hostile environment but some inappropriate words may have been used. *Id.* ¶ 41. Plaintiff also met with the GLO ombudsman. *Id.* ¶ 40. The ombudsman indicated he would get back to Plaintiff but failed to do so. *Id.*

On November 4, 2016, Plaintiff was fired. *Id.* ¶42. HR Director Kalani Hawks presented Plaintiff with a termination letter issued by GLO's Chief Clerk Anne Idsal. *Id.* Director Hawks verbally cited the discord between Ms. McBride and Plaintiff as the reason for Plaintiff's termination. *Id.*

Plaintiff subsequently filed this suit, asserting two causes of action against GLO and its administrators: (1) Defendants violated the FMLA by retaliating against him for taking leave and (2) Defendants violated the ADA by retaliating and discriminating against him for associating with a disabled person, his husband. *Id.* ¶¶ 43–48; *see also* Resp. [#21] at 1. Defendants move to dismiss Plaintiff's amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## Analysis

### I. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, the plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

4

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts "must consider" the complaint, as well as other sources such as documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

I.  **Application**

Defendants' motion to dismiss must be granted because Plaintiff fails to allege facts supporting a causal link as explained below.

A.  **FMLA Claim**

In claiming Defendants violated the FMLA, Plaintiff alleges he was terminated because of his need to take FMLA leave, his complaints Ms. Danieli was interfering with his FMLA rights, and Ms. McBride's perception Plaintiff caused Ms. Danieli's termination. Am. Compl. [#10] ¶ 43.

Under the FMLA, an eligible employee is entitled to a total of twelve weeks of leave during any twelve-month period "to care for the spouse . . . if such spouse . . . has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). After a qualifying absence, the employer must restore the employee to the same position or a position comparable to the one held by the employee before the

leave. *Id.* § 2614(a)(1). A plaintiff may be entitled to recovery if his employer retaliates against him for exercising his FMLA rights or for opposing practices prohibited by the FMLA. *Id.* §§ 2615, 2617.

To state a *prima facie* case for retaliation under the FMLA, a plaintiff must allege that "1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA." *Acker v. General Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (quoting *Mauder v. Metro. Transit Auth. of Harris Cty.*, 446 F.3d 574, 583 (5th Cir. 2006)); *see also Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). "The third element requires the employee to show 'there is a causal link' between the FMLA-protected activity and the adverse action." *Acker*, 853 F.3d at 788 (quoting *Richardson*, 434 F.3d at 332).

In this case, it is undisputed Plaintiff suffered an adverse employment action when he was terminated, and Plaintiff does not allege he suffered any other adverse employment action. *See* Am. Compl. [#10]. In moving to dismiss Plaintiff's FMLA claim, Defendants argue Plaintiff fails to allege facts indicating (1) he was entitled to FMLA protection and (2) his FMLA-protected activity caused his termination. The Court examines both of these grounds for dismissal.

### 1. FMLA Protection

Plaintiff claims he was entitled to FMLA protection because he took FMLA leave and complained about Ms. Danieli's hostility toward his use of FMLA leave.

Plaintiff sufficiently pleads he was entitled to FMLA leave to survive a motion to dismiss as he alleges he took leave on four occasions in the summer of 2016 to care for his spouse, who had a serious health condition.[2] *See* 29 U.S.C. § 2612(a)(1)(C).

---

[2] Defendants argue Plaintiff's latter two absences exceeded the scope of medical certification provided by Dr. Gigliotti and thus are not entitled to FMLA protection. Mot. Dismiss [#17] at 7–8. Whether each of Plaintiff's absences qualifies as protected FMLA leave is a fact issue better addressed by a motion for summary judgment or at trial.

However, Plaintiff has not sufficiently alleged he opposed practices prohibited by the FMLA. Plaintiff alleges he reported insensitive and offensive comments made by Ms. Danieli regarding Plaintiff's absences from work to Ms. McBride and, when interviewed, to HR staff. Plaintiff also alleges he filed a complaint with HR because he was concerned Ms. McBride blamed him for Ms. Nelson's departure and would retaliate against him. The FMLA does not prohibit insensitive or offensive comments about absences by a coworker. *See* 29 U.S.C. § 2615; *c.f. Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (confirming that negative stray remarks, such as comments made by an individual with no authority over employment decisions, are not evidence of discrimination). Likewise, the FMLA does not address misplaced blame or hostile workplace relationships. *Id.*; *see also Smith-Schrenk v. Genon Energy Servs., L.L.C.*, No. CIV.A. H-13-2902, 2015 WL 150727, at *4 (S.D. Tex. Jan. 12, 2015) (noting the court "has not found any case wherein a federal court has recognized a FMLA cause of action based on hostile work environment"). Thus, Plaintiff's complaints to Ms. McBride and HR did not address conduct prohibited by the FMLA and therefore do not entitle him to FMLA protection.

As a result, Plaintiff's alleged FMLA protection is limited to Plaintiff's claimed use of FMLA leave. Plaintiff's FMLA claim therefore distills to an allegation Defendants terminated Plaintiff for taking FMLA leave.

2. **Causal Link**

Plaintiff argues Ms. Danieli's hostility, Ms. McBride's animosity, and the temporal proximity of his FMLA leave and his termination show a causal link sufficient to establish a *prima facie* case of retaliation under the FMLA.

Ms. Danieli's alleged hostility does not establish a causal connection. According to Plaintiff's version of the facts, only Ms. Danieli expressed direct hostility toward Plaintiff's use of FMLA leave by making negative and offensive comments. Comments are evidence of impermissible discrimination if, among other requirements, they are made by an individual with authority over the

employment decision at issue. *Jackson*, 602 F.3d at 380. Plaintiff alleges no facts indicating Ms. Danieli played any role in his termination. Instead, the facts alleged by Plaintiff illustrate the opposite. When Plaintiff was terminated, Ms. Danieli had already been fired, at least in part for her behavior toward Plaintiff. Thus, Plaintiff's allegations concerning Ms. Danieli's behavior do not support a causal link.

Similarly, Plaintiff's allegations concerning Ms. McBride's animosity do not support an inference Plaintiff was terminated for using FMLA leave. As described by Plaintiff, Ms. McBride treated all three contract managers—Ms. Nelson, Ms. Ramaekers, and Plaintiff—with the same animosity. In fact, Plaintiff insinuates Ms. McBride's animosity caused Ms. Nelson and Ms. Ramaekers to resign. Plaintiff does not claim Ms. Nelson or Ms. Ramaekers took any FMLA leave, and Plaintiff therefore effectively alleges Ms. McBride treated him the same as employees who had not requested or used FMLA leave. Consequently, Plaintiff's allegations Ms. McBride treated him with animosity do not suggest Plaintiff's use of leave caused his termination.

Only the temporal proximity of Plaintiff's use of leave and his termination remains as a possible support for causality. To accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish *a prima facie* case, the temporal proximity must be "very close." See *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Plaintiff was fired approximately five months after first using leave and approximately two and a half months after last using leave. Even using the shorter period of two and a half months, the temporal proximity is not close enough to establish a causal link by itself. See *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 402 (5th Cir. 2012) (concluding a two-month period between plaintiff's FMLA leave and his dismissal, while "short, []is not, by itself, enough to show a causal connection based on temporal proximity alone"); *Potts v. United Parcel Serv.*, No. 3:11-CV-2407-L, 2013 WL 4483080, at *14 (N.D. Tex. Aug. 22, 2013) (finding two months insufficient to establish a causal link for a *prima facie* FMLA retaliation claim).

As a result, Plaintiff fails to plead facts showing a causal link between his use of FMLA leave and his termination. Plaintiff thus fails to allege a *prima facie* case of FMLA retaliation and his FMLA claim must be dismissed.

**B.     ADA Claim**

The ADA prohibits employers from discriminating against a person because he associates with a disabled person. 42 U.S.C. § 12112(b)(4). Specifically, employers are prohibited from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." *Id.*

In order to state a *prima facie* case of associational discrimination, district courts within this circuit require a plaintiff to allege the following: (1) the plaintiff was "qualified" for the job at the time of the adverse employment action; (2) the plaintiff was subjected to adverse employment action; (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. *See, e.g., Spinks v. Trugreen Landcare, L.L.C.*, 322 F. Supp. 2d 784, 795 (S.D. Tex. 2004); *Moresi v. AMR Corp.*, No. CA 3:98–CV–1518–R, 1999 WL 680210, at *2–*3 (N.D. Tex. Aug. 31, 1999). The fourth element requires a plaintiff to allege the employer took the adverse employment action because of the plaintiff's relationship with a disabled person. *See Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 760 (5th Cir. 1996) (requiring a plaintiff alleging associational discrimination to show he was terminated because of his association with a disabled person).

Here, as with Plaintiff's FMLA claim, Plaintiff fails to allege facts supporting a plausible inference of causation. The Court assumes Plaintiff's husband qualified as disabled under the ADA, but Plaintiff does not allege any person at GLO made any negative comments or expressed any hostility toward Plaintiff's association with his disabled husband. At most, Plaintiff relies on Ms.

9

Danieli's hostile remarks about Plaintiff's use of leave and the temporal proximity of Plaintiff's leave to his termination. But just as these facts were insufficient to show causation for Plaintiff's FMLA claim, they are insufficient to establish a causal link between Plaintiff's association with his disabled husband and his termination. Therefore, Plaintiff's ADA claim must also be dismissed.

## Conclusion

Because Plaintiff fails to allege facts showing a causal relationship between activities protected by the FMLA and ADA and his termination, Plaintiff fails to state a claim upon which relief can be granted.[3] The Court therefore GRANTS Defendants' motion to dismiss Plaintiff's amended complaint.

Accordingly,

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss [#6] and Correction Motion to Dismiss [#9] are DISMISSED as moot;

IT IS FURTHER ORDERED that Defendants' Motion for Leave to File Sealed Document [#18] is GRANTED; and

IT IS FINALLY ORDERED that Defendants' Motion to Dismiss [#17] is GRANTED.

SIGNED this the 15th day of March 2018.

SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] Although Plaintiff asserts facts indicating Defendants may have retaliated against him, Plaintiff does not allege facts showing the alleged retaliation is the type prohibited by the FMLA or ADA, i.e. retaliation for engaging in activities protected by the FMLA or ADA.